1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                        DISTRICT OF OREGON

9                        PORTLAND DIVISION

10

11

12   LISA EPHREM,                              No. 3:13-cv-00866-HU

13        Plaintiff,                           **OPINION AND
                                                      ORDER**

14        v.

15   STANDARD INSURANCE COMPANY,

16             Defendant.

17   ─────────────────────────────

18   Jacob Wieselman
     Wieselman Law Group
19   312 N.W. Fifth Street, Suite 200
     Portland, OR 97209
20   Telephone: (503) 467-7257
     Facsimile: (503) 697-9299
21
22        Attorney for Plaintiff

23   Rick S. Pope
     Kristen A. Chambers
24   Kirklin Thompson & Pope LLP
     1000 S.W. Broadway, Suite 1616
25   Portland, OR 97205-3035
     Telephone: (503) 222-1640
26   Facsimile: (503) 227-5251

27        Attorneys for Defendant

28

     Page 1 - OPINION AND ORDER

1  HUBEL, Magistrate Judge:

2      Before the Court is Defendant Standard Insurance Company's

3  ("Defendant") motion for judgment on the pleadings pursuant to

4  Federal Rule of Civil Procedure ("Rule") 12(c).  Defendant's

5  principal contentions are that: (1) Plaintiff Lisa Ephrem's

6  ("Plaintiff") exclusively state common law claims are preempted by

7  the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

8  U.S.C. §§ 1001-1461; (2) Plaintiff does not qualify as a

9  beneficiary on certain claims and thus lacks statutory standing;

10 and (3) Plaintiff has failed to join necessary parties.  For the

11 reasons that follow, Defendant's motion (Docket No. 24) for

12 judgment on the pleadings is granted in part and denied in part.

13                 **I. FACTS AND PROCEDURAL HISTORY**

14     These are the facts as presented by Plaintiff in her

15 complaint.  Plaintiff is an Oregon resident licensed as an

16 automobile dealer by the Oregon Department of Motor Vehicles.

17 (Compl. ¶ 1.)  She is authorized to conduct business under the name

18 "Carr City" by the Oregon Secretary of State, Corporation Division.

19 (Compl. ¶ 1.)  At the beginning of August 2011, Plaintiff met with

20 one of Defendant's insurance "producers," Donovan Rayfield

21 ("Rayfield"), at his office in Battle Ground, Washington.[1]  (Compl.

22 ¶¶ 3-4.)  Plaintiff asked Rayfield to recommend an appropriate

23

24     [1] Defendant maintains its principal place of business in
   Portland, Oregon.  (Compl. ¶ 2.)  For diversity purposes, "'a
25 corporation shall be deemed to be a citizen . . . of the State
   where it has its principal place of business.'"  *Montrose Chem.*
26 *Corp. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1234 (9th Cir.
   1997) (quoting 28 U.S.C. § 1332(c)(1)).  Because both parties are
27 from the same state, this case would not fall under the Court's
   diversity jurisdiction.  *See Lincoln Prop. Co. v. Roche*, 546 U.S.
28 81, 84 (2005)

Page 2 - OPINION AND ORDER

life, accidental death and dismemberment insurance for the employees of Carr City. (Compl. ¶ 4.)

After obtaining all of the necessary information about Carr City from Plaintiff, Rayfield determined that Defendant's group life insurance policy would be the best fit for Carr City's needs, business and employees. (Compl. ¶ 8.) On August 3, 2011, with the assistance of Rayfield, Plaintiff completed and a signed an application for a group life insurance policy for her employees. (Compl. ¶ 9.) The application includes a provision entitled "Active Work Requirement," which states: "A person must meet an Active Work requirement to become insured. Members who have not met an Active Requirement are not insured until returning to work for one full day and meeting all other contractual requirements." (Compl. ¶ 10, Ex. 1.) Plaintiff initialed her acknowledgment of the active work requirement. (Compl. ¶ 10, Ex. 1.)

On October 11, 2011, Defendant issued a group life insurance policy ("the policy") with an effective date of September 1, 2011. (Compl. ¶ 17, Ex. 3.) On December 16, 2011, one of the policy members, Ruby Marks, passed away and Defendant paid the death benefits due under the policy. (Compl. ¶ 21.) Almost three months later, on March 10, 2012, policy member Sophie Marks passed away, but Defendant refused to pay the death benefits due under the policy. (Compl. ¶ 22.) On April 25, 2012, policy member James Zeko passed away and Defendant refused to pay death benefits due under the policy. (Compl. ¶ 23.) The same thing occurred again on August 23, 2012, after policy member John Ellis passed away. (Compl. ¶ 26.)

1    In letters dated September 14, 2012, Defendant informed
2  Plaintiff that Sophie Marks and James Zeko did not qualify as
3  members under the policy due to the fact that: (1) they did not
4  work forty hours per week; (2) they may have been independent
5  contractors; (3) Plaintiff did not control, supervise or direct
6  individuals performing services for Carr City; and (4) Carr City
7  employees were not covered by a contract negotiated between
8  Defendant and Plaintiff. (Compl. ¶¶ 27-30.)
9    On October 5, 2012, an eligible employee, David Eli, passed
10  away and Defendant once again refused to pay death benefits due
11  under the policy. (Compl. ¶ 31.)  Roughly thee months later, on
12  January 3, 2013, Defendant rescinded the policy based on purported
13  material misrepresentations in the application.  (Compl. ¶ 32.)
14  Defendant explained that, at the time Plaintiff submitted her
15  application, "Carr City likely ha[d] no eligible Member employees
16  and had [Defendant] known that, it would not have issued the
17  policy." (Compl. ¶ 33.)  Twelve days later, by letter dated January
18  15, 2013, Defendant denied the claim for benefits for David Eli on
19  the ground that it had rescinded the policy.  (Compl. ¶ 36.)
20  Defendant also demanded that Plaintiff pay back the $100,000 in
21  death benefits that were paid out following the death of Ruby Marks
22  on December 16, 2011.  (Compl. ¶ 37.)
23    On the basis of the foregoing events, Plaintiff filed a
24  complaint against Defendant in Multnomah County Circuit Court on
25  April 24, 2013, alleging claims for breach of contract (Claim One),
26  breach of the implied covenant of good faith and fair dealing
27  (Claim Two), tortious breach of the implied covenant of good faith
28

Page 4 - OPINION AND ORDER

and fair dealing (Claim Three), negligence (Claim Four), estoppel (Claim Five), and reformation of the policy (Claim Six).

On May 22, 2013, Defendant removed the action to federal court on the basis of federal question jurisdiction. Defendant responded with an answer, affirmative defenses and counterclaims on May 29, 2013. A little over two months later, on July 30, 2013, the case was reassigned to the undersigned after the parties consented to proceed before a magistrate judge. *See* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(a)-(b). Defendant's Rule 12(c) motion for judgment on the pleadings followed on October 4, 2013. Defendant filed an amended motion for judgment on the pleadings four days later.

## II. LEGAL STANDARD

### A. Rule 12(c) Motion

"After the pleadings are closed——but early enough not to delay trial——a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "In considering a motion for judgment on the pleadings, the district court must view the facts presented in the pleadings and the inferences to be drawn from them in the light most favorable to the nonmoving party." *David v. Allstate Ins. Co.*, No. CV 13-4665-CAS, 2013 WL 5178558, at *1 (C.D. Cal. Sept. 9, 2013); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) ("A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, [a] party is entitled to judgment as a matter of law.")

For purposes of a Rule 12(c) motion, "the moving party concedes the accuracy of the factual allegations of the complaint, but does not admit other assertions that constitute conclusions of law or matters that would not be admissible in evidence at trial."

Page 5 - OPINION AND ORDER

*David*, 2013 WL 5178558, at *1 (citing 5C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 1368 (3d ed. 2004)).  To the extent "a motion for judgment on the pleadings is based on a defense that the complaint fails to state a claim for relief, the standard applicable to a motion to dismiss pursuant to Rule 12(b)(6) governs." *Merrifield v. Schwarzenegger*, No. 04-0498 MMC, 2004 WL 2926160, at *1 (N.D. Cal. Sept. 23, 2004).

**B.   Rule 12(b)(6) Motion.**

In the Rule 12(b)(6) context, the court must accept all of the claimant's material factual allegations as true and view all facts in the light most favorable to the claimant. *Reynolds v. Giusto*, No. 08-CV-6261, 2009 WL 2523727, at *1 (D. Or. Aug. 18, 2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "In sum, for a complaint to survive [under the Rule 12(b)(6) standard], the non-conclusory factual content, and reasonable inference from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### III. DISCUSSION

**A.   Materials Outside of the Pleadings**

"In general a court may not consider items outside the pleadings when deciding a motion for judgment on the pleadings, but may consider items of which it can take judicial notice." *Wallis v. Centennial Ins. Co., Inc.*, 927 F. Supp. 2d 909, 913 (E.D. Cal.

Page 6 - OPINION AND ORDER

2013); *Fleming v. Pickard*, 581 F.3d 922, 925 n.4 (9th Cir. 2009) (declining to consider materials outside of the pleadings in evaluating a Rule 12(c) motion).

Both parties have submitted exhibits in support of their papers. Plaintiff's counsel attached courtesy copies of three cases he relied on in opposing the pending motion, as well as written designations of authority from the beneficiaries of Mr. Zeko, Mr. Eli and Mr. Ellis, indicating that Plaintiff, "to the full extent permissible under ERISA, under common law and under any applicable federal or state statute, to act on [their] behalf and to pursue any and all rights, remedies and benefits available to [them] as the named beneficiar[ies]." (Pl.'s Mem. Opp'n Ex. D at 2-4.)

Defendant's counsel, on the other hand, filed a declaration in support of her reply brief. Attached to Defendant's counsel's declaration are (1) a complaint Plaintiff filed against Lifemap Assurance Company ("Lifemap") in Multnomah County Circuit Court on August 21, 2013; (2) Lifemap's memorandum in support of a motion to dismiss, filed on September 30, 2013, in the District of Oregon; (3) Plaintiff's amended complaint against Lifemap; and (4) the group life insurance policy at issue in this case (which is also attached to Plaintiff's complaint as Exhibit 3).

Providing courtesy copies of case law is perfectly appropriate. The same can be said about relying on an exhibit that is the attached to, and the subject of, Plaintiff's complaint. Defendant's counsel did not, however, ask the Court to take judicial notice of court filings from the Lifemap proceeding. Plaintiff's counsel similarly failed to ask the Court to take

Page 7 - OPINION AND ORDER

judicial notice of the designations of authority.  Absent such a request, the Court declines to take judicial notice of the court filings from the Lifemap proceeding and the designations of authority.  The Court does note, however, that these documents would have no impact on the Court's rulings or the Court's ability to address whether the policy's anti-assignment clause necessitates the joinder of additional parties.

**B.  ERISA Preemption**

"There are two strands to ERISA's powerful preemptive force." *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005).  First, there is "complete preemption under ERISA § 502(a), 29 U.S.C. § 1132(a), and [second, there is] conflict preemption under ERISA § 514(a), 29 U.S.C. § 1144(a)." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944-45 (9th Cir. 2009).  Cases from the Ninth Circuit use confusingly similar terminology when referring to these two strands. *Cf. Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081 (9th Cir. 2009) (referencing "express" preemption under ERISA § 514(a), and "conflict" preemption under ERISA § 502(a)).  Unless the Court is quoting another case, the Court will generally refer to ERISA § 502(a) as "complete preemption" and ERISA § 514(a) as "conflict preemption" throughout this Opinion and Order, consistent with the Ninth Circuit's decision in *Marin*.

ERISA § 502(a) "contains a comprehensive scheme of civil remedies to enforce ERISA's provisions." *Cleghorn*, 408 F.3d at 1225.  Any "state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those

Page 8 - OPINION AND ORDER

causes of action would not necessarily be preempted by section 514(a)." *Id.* ERISA § 514(a) "expressly preempts all state laws 'insofar as they may now or hereafter relate to any employee benefit plan,' but state 'law[s] . . . which regulat[e] insurance, banking, or securities' are saved from this preemption." *Id.* (citations omitted). While each "of these preemption provisions defeat state-law causes of action on the merits," *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011), there are "different jurisdictional consequences that result from these two kinds of preemption."[2] *Marin*, 581 F.3d at 945.

## 1. An Exception to the Well-Pleaded Complaint Rule

Defendant removed Plaintiff's complaint—which asserts only state law causes of action—to federal court based on federal question jurisdiction. *See* 28 U.S.C. §§ 1331(a), 1441(a). Ordinarily, "[a] cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Marin*, 581 F.3d at 944 (quoting *Hansen v. Blue Cross of Cal.*, 891 F.2d 1384, 1386 (9th Cir. 1989)). "'The well-pleaded complaint rule is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts.'" *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). But "there is an exception to the well-pleaded complaint rule for state-law causes of action that are *completely* preempted by § 502(a) [of ERISA]." *Id.* (emphasis added).

---

[2] For the purposes of the present motion, Defendant's counsel concedes that only complete preemption is at issue and any arguments based on conflict preemption will be addressed after Plaintiff amends her complaint in accordance representations made during oral argument and this Opinion and Order.

Page 9 - OPINION AND ORDER

1    Complete preemption under § 502(a) of ERISA is "'really a
2  jurisdictional rather than a preemption doctrine, [as it] confers
3  exclusive federal jurisdiction in certain instances where Congress
4  intended the scope of a federal law to be so broad as to entirely
5  replace any state-law claim.'"   *Id.* at 945 (quoting *Franciscan*
6  *Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare*
7  *Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008)).   Where, as here, a
8  complaint alleges only state law causes of action, and removal was
9  based on federal question jurisdiction, the court's jurisdiction is
10 dependent on a showing that at least one state law cause of action
11 is completely preempted by § 502(a) of ERISA: "[I]f the doctrine of
12 complete preemption does not apply, . . . the district court [is]
13 without subject matter jurisdiction." *Id.*; *see also Metro. Life*,
14 481 U.S. at 65-66 (finding complete preemption converts "an
15 ordinary state common law complaint into one stating a federal
16 claim for purposes of the well-pleaded complaint rule.")

17    Indeed, in *Melamed v. Blue Cross of California*, No. CV
18 11-4540, 2011 WL 3585980 (C.D. Cal. Aug. 16, 2010), the district
19 court denied a motion to remand on the ground that "ERISA [§ 502]
20 completely preempt[ed] at least one of [the] [p]laintiffs' claims."
21 *Id.* at *4.  Similarly, in *Fossen*, the Ninth Circuit held that the
22 district court properly denied the plaintiffs' motion to remand
23 because one of the plaintiffs' state law causes of action was
24 completely preempted by § 502(a) of ERISA.  *Fossen*, 660 F.3d at
25 1111-13.  The Ninth Circuit went on to note that, "although the
26 district court did not explicitly discuss supplemental
27 jurisdiction, the court evidently concluded that any non-preempted
28 state-law claims were 'so related to claims in the action within

Page 10 - OPINION AND ORDER

such original jurisdiction that they form part of the same case or controversy.'"  *Id.* at 1113 n.7 (quoting 28 U.S.C. § 1441(c)).

The fact that Plaintiff has not, to date, moved to remand this action to state court is inconsequential.  *See United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 972 (E.D. Cal. 2004) (stating that a district court has "an independent obligation to address *sua sponte* whether [it] has subject-matter jurisdiction.");  *Borreani v. Kaiser Found. Hosps.*, 875 F. Supp. 2d 1050, 1054 (N.D. Cal. 2012) ("If, following removal, a federal court determines there was . . . an absence of subject matter jurisdiction, it may remand the action to state court *sua sponte*.")  For example, in *Webb v. Desert Bermuda Development Co.*, 518 F. App'x 521 (9th Cir. 2013), the defendant removed an exclusively state law complaint to federal court on the basis of the complete preemption doctrine, only later to have the district court grant summary judgment in its favor. *Id.* at 522.  The plaintiff did not challenge the district court's decision not to remand the case to state court.  *Id.*  After noting that it must *sua sponte* address its subject matter jurisdiction, the Ninth Circuit concluded that the complete preemption doctrine was not applicable and did not provide a basis for removal.  *Id*. In light of this finding, the Ninth Circuit vacated the district court's disposition and remanded with instructions that the district court remand the case to state court.  *Id.*

**2.    The Complete Preemption Test**

The Ninth Circuit employs the following two-part test for determining whether a state law claim is completely preempted by ERISA § 502(a): "a state-law cause of action is completely preempted if (1) an individual, at some point in time, could have

Page 11 - OPINION AND ORDER

brought the claim under ERISA § 502(a)(1)(B), and (2) where there is no other independent legal duty that is implicated by a defendant's actions." *Fossen*, 660 F.3d at 1107-08 (citation and internal quotation marks omitted). "The complete preemption doctrine applies to the other subparts of § 502(a) as well." *Id.* at 1108.

The genesis of ERISA's two-prong complete preemption test was the Supreme Court's 2004 decision in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). In that case, "the Supreme Court determined that the first prong was met because the *Davila* plaintiffs' only claims related to 'denial of coverage promised under the terms of the ERISA-regulated employee benefit plans,' and the plaintiffs could have brought suit under § 502(a)(1)(B)." *Melamed*, 2011 WL 3585980, at *3 (quoting *Davila*, 542 U.S. at 211). The second prong was also satisfied because the *Davila* "plaintiffs' lawsuit sought only to 'rectify a wrongful denial of benefits promised under [an] ERISA-regulated plan[], and [did] not attempt to remedy any violation of a legal duty independent of ERISA." *Id.*

### 3. Application of *Davila*

During the oral argument held on December 17, 2013, Plaintiff's counsel conceded that Claim One (breach of contract), Claim Two (breach of the implied covenant of good faith and fair dealing) and Claim Three (tortious breach of the implied covenant of good faith and fair dealing), were all completely preempted because they could have been brought under § 502(a) and they do not implicate a legal duty independent of ERISA. To that end, the parties agree that Plaintiff should be granted leave to amend her complaint in order to allege Claims One, Two and Three as ERISA §

Page 12 - OPINION AND ORDER

1   502(a) claims.  In light of the foregoing, it evident that federal

2   question jurisdiction exists in this case and that Defendant's

3   motion for judgment on the pleadings should be granted with respect

4   to Claims One, Two and Three.

5       As to Claim Four (negligence), the parties seem to agree with

6   the Court's suggestion that there are allegations in the complaint

7   implicating a legal duty independent of ERISA──namely, the duty to

8   procure adequate insurance.  That alone defeats dismissal of Claim

9   Four.  *See Fossen*, 660 F.3d at 1108 (explaining that *Davila's*

10  two-prong test is in the conjunctive, meaning a state law claim is

11  preempted by § 502(a) only if both prongs of the test are

12  satisfied).

13      As to Claim Five (estoppel), Plaintiff alleges that it is

14  inequitable for Defendant to: (1) assert "provisions and terms of

15  the Policy in order to determine Ruby Marks, Sophie Marks, James

16  Zeko, David Eli and John Ellis were not members as defined in the

17  Policy and withhold payment of corresponding death benefits," and

18  (2) rescind "the Policy due to purported material

19  misrepresentations [by Plaintiff]." (Compl. ¶ 61.) Based on these

20  allegations, Plaintiff claims that Defendant "should be estopped

21  from asserting conditions of exclusion from coverage, from

22  rescinding the Policy and from withholding the death benefits at

23  issue." (Compl. ¶ 62.)

24      Claim Five, as plead, is clearly an attempt by Plaintiff to

25  rectify an alleged wrongful denial of benefits and/or "enjoin an[]

26  act or practice which violates [ERISA]." 29 U.S.C. § 1132(a). The

27  allegations in Claim Five could have been brought under § 502(a)

28  and they do not implicate a legal duty independent of ERISA.

Page 13 - OPINION AND ORDER

1 Accordingly, Defendant's motion for judgment on the pleadings is

2 granted with respect to Claim Five.

3     As to Claim Six (reformation of the policy), Plaintiff

4 indicated during oral argument that she is attempting to seek

5 equitable relief under ERISA § 502(a)(3).  *See* 29 U.S.C. §

6 1332(a)(3) (allowing ERISA plan participant, beneficiary, or

7 fiduciary to sue "to enjoin any act or practice which violates any

8 provision of [ERISA]," and "to obtain other appropriate equitable

9 relief . . . to redress such violations or . . . to enforce any

10 provisions of [ERISA]").  Because Plaintiff could have brought

11 Claim Six under § 502(a), and because the claim does not implicate

12 a legal duty independent of ERISA, the Court concludes that Claim

13 Six is completely preempted.

14 **C.  Anti-Assignment Clause**

15     The final issue to decide is whether the policy's anti-

16 assignment clause necessitates the joinder of additional parties,

17 namely the beneficiaries of Mr. Zeko, Mr. Eli and Mr. Ellis.

18 Plaintiff contends that she is the "assignee of the rights granted

19 by ERISA to the beneficiaries of . . . Zeko, Eli and Eliis, [and

20 therefore] has standing to seek penalties and injunctive relief, as

21 well as benefits." (Pl.'s Opp'n at 6.)

22     The policy's anti-assignment clause provides: "The *rights and*

23 *benefits* under the Group Policy cannot be assigned." (Compl., Ex.

24 3 at 22) (emphasis added).  It is well settled that an ERISA "Plan

25 may . . . prohibit the assignment of rights and benefits." *Eden*

26 *Surgical Ctr. v. B. Braun Med. Inc.*, 420 F. App'x 696, 697 (9th

27 Cir. 2011).  In *Lehigh Valley Hospital v. UAW Local 259 Social*

28 *Security Dep't*, No. CIV. A. 98-4116, 1999 WL 600539 (E.D. Pa. Aug.

Page 14 - OPINION AND ORDER

10, 1999), for example, the specific issue before the court was "whether [the] plaintiff ha[d] standing under ERISA to seek reimbursement from the Plan as the assignee of a Plan participant, despite the existence of a Plan provision barring the assignment of any *rights or benefits* due under the terms of the Plan." *Id.* at *1 (emphasis added). Relying in part on Ninth Circuit case law, the *Lehigh Valley* court held that: "Since the Plan expressly prohibits any assignment of rights or benefits to which a participant may be entitled, [the Court] find[s] that plaintiff lacks standing to bring suit under ERISA." *Id.* at *3.

*Lehigh Valley* can be distinguished insofar as Plaintiff herself qualifies as a beneficiary under § 1132(a) and may sue to enforce the rights allegedly due to *her* under the policy (*i.e.*, as the named beneficiary of Ms. Marks). Nevertheless, the *Lehigh Valley* case appears to be directly on point regarding whether Plaintiff has standing to bring suit as an ERISA assignee. Indeed, the policy in *Lehigh Valley*, as here, prohibited the assignment of rights and benefits, and the *Lehigh Valley* court was guided by Ninth Circuit case law. The Court therefore concludes that Plaintiff lacks standing to bring suit as an ERISA assignee in light of the policy's anti-assignment clause.[3]

In the event the Court reached this conclusion, Plaintiff has stated that "the beneficiary of each deceased may be added to the

---

[3] While Plaintiff argued that the designations of authority in effect superseded the anti-assignment clause, Plaintiff did not ask the Court to take judicial notice of the designations of authority. Since the Court has declined to take judicial notice on its own, it similarly declines to address whether the designations of authority supersede the anti-assignment clause.

lawsuit." (Pl.'s Opp'n at 7.)   The Court agrees that the beneficiaries should be added and expects that to be reflected in Plaintiff's amended complaint.

### IV. CONCLUSION

For the reasons stated, Defendant's motion (Docket No. 24) for judgment on the pleadings is granted in part and denied in part. Plaintiff is granted thirty (30) days leave to replead in accordance with the representations made during the December 17, 2013 oral argument.

IT IS SO ORDERED.

Dated this  19th  day of December, 2013.

/s/ Dennis J. Hubel

_____
                        DENNIS J. HUBEL
                United States Magistrate Judge

Page 16 - OPINION AND ORDER